CONSOLIDATED PIEDMONT CABLE CO. v. PACIFIC CABLE RY. CO.

(Circuit Court of Appeals, Ninth Circuit. October 24, 1892.)

No. 50.

1. PATENTS FOR INVENTIONS—INFRINGEMENT—COMBINATION OF OLD ELEMENTS —EQUIVALENTS.
     The third claim of letters patent No 189.204, issued April 3, 1877, to William Eppelsheimer, for an "improved clamp apparatus for tramways or street railways," which covers a combination of five old elements, one consisting of friction rollers, is infringed by a device containing four of the same elements, and a fifth consisting of a bell crank or a toggle; for both of the latter are well-known devices, and the equivalents of the friction rollers.

2. SAME.
     While a combination claim, composed of old elements, may not be infringed by using all but one of its elements, yet infringement results if an equivalent is substituted for the omitted element.[1]

Appeal from the Circuit Court of the United States for the Northern District of California.

In Equity. Bill by the Pacific Cable Railway Company against the Consolidated Piedmont Cable Company for infringements of letters patent No. 189,204, issued April 3, 1877, to William Eppelsheimer, for an "improved clamp apparatus for tramways or street railways." The circuit court entered a decree sustaining the validity of the third claim, finding infringement thereof by defendant, perpetually enjoining the same in future, and referring the cause to a master to take an account of profits and damages. From this decree, defendant appeals. Affirmed.

The patent contains seven claims, but at the trial the issues were confined to the third claim, which reads as follows:

"The combination with the shank, E, as described, of the hinged clamping jaws, e³, together with the operating slide, F, its crossbar, f², and bearing rollers, f, as and for the purpose specified."

[1] See note at end of case.

In the specifications the gripping device is thus described:

"In an aperture extending longitudinally through the shank, E, is arranged the slide bar or rod, F. Upon the lower end of the shank, E, are hinged the jaws, $e^3$, between which, in suitable semicircular recesses or channels, b', on their inner faces, the cable is grasped. The outer faces of these jaws are inclined outwardly from the hinge joint to their lower edges, as shown at $e^4$, Fig. 3, and upon these faces are arranged to bear-friction rollers, f, which are mounted on axles, f', arranged above the jaws, and fixed in, and carried by, a crosspiece, $f^2$, which is fixed on the lower end of the slide, F. $e^5$ is a pin set in one of the eye pieces of the hinge joint of the jaws, and projecting above one of the said friction rollers, f.

"G, G, are frames hinged to the lower end of the shank, E, and carrying upon one or both ends the guide rollers, g, each pair being arranged to engage between them the cable, D, and to support it and guide it to the jaws, $e^3$. These frames are pressed downward, and their rollers thus held upon the cable by a spring, g', while an angle arm or stud, $g^2$, fixed in one of them, as seen in Fig. 2, and extending up and over the crosspiece, $f^2$, on the slide, f, operates to swing the frame, and, consequently, to part the rollers; g, when the slide is raised, and it is desired to disengage the gripping device from the cable. Two half rollers, H, (carried by spring arms, h, which extend downward from the shank, E. and pass under the friction rollers, f, carried by the slide, F, and which said rollers are brought side by side to form one roller to support and guide the cable to the jaws, $e^3$, by the downward movement of the slide, the rollers, f, pressing upon the curves, h', in the arms, h,) may be employed, instead of the rollers, g, or they may be employed at one end of the jaws in connection with a single pair of the rollers, g, in frames, G, at the other end of the jaws, as shown in the drawings, (sheet 1.) The rollers, H, are operated to release the cable when the gripping device is disengaged therefrom by the raising of the slide, F, when, the spring arms, h, being relieved from pressure by the rollers, f, the two half rollers will separate from each other, and the cable may pass between them. The slide and its shank piece, E. may be conveniently raised or lowered by means of a lever, as shown at I, Figs. 4 and 5.

"The operation of my invention is as follows: * * * The shank is lowered until the rollers or pulleys, $e^2$, rest upon the cable, and the rollers or wheels, e, rest on the track or rail, c' The slide, F, is now forced downward in the shank, E. and, by means of the pressure of the rollers, f, on the outer faces of the jaws, $e^3$, the jaws are closed upon the cable. and grip it tightly, while the rollers, g, or, H, support and guide the cable to the jaws. The truck or car is thus set in motion, and, as the gripping device moves along with the cable, it encounters in its progress the lower pulleys, d, and the upper pulleys, d'."

Wheaton, Kalloch & Kierce, for appellant.

W. F. Booth, for appellee.

Before McKENNA, Circuit Judge, and ROSS and KNOWLES, District Judges.

McKENNA, Circuit Judge.   The device alleged to be infringed by defendant is a clamp or grip for endless rope or cable railways.   The patentee calls it in his specifications an "improved clamp apparatus for

tramways or street railways," which may be construed as conceding the existence of a predecessor of some kind for like purpose, the entire form and comparative utility of which is not shown. The patent, therefore, is a combination of old elements, and consists of seven claims, the third of which is alleged to be infringed. It is a combination of five elements. The infringing device is also a combination of five elements, and four of them, it is conceded, resemble four elements of the plaintiff's combination. In the plaintiff's machine, the pressure which secures the grip of the cable is exerted through friction rollers; in the defendant's machine, through what was called in argument a "bell crank." In the testimony it was assimilated by an expert witness to a toggle joint. If it is either, it is an equivalent. A bell crank is a well-known mechanical device, and a toggle joint was held an equivalent to exert pressure of friction rollers by Judge Washington in Gray v. James, 1 Pet. C. C. 399.

It is urged by defendant's counsel that a combination claim composed of old elements is not infringed by using one of its elements less than all. But the qualification must be added that no equivalent be substituted for the omitted element. This is established by cases cited by defendant, and which are unnecessary to repeat. The distinction between a primary and a secondary patent is not overlooked, but, whether there is a strict or broad construction of equivalents, the defendant infringes. The axles and rollers are the crosspiece of the operating slide of plaintiff's machine. Their counterparts in defendant's machine are the circular arms of its operating slide and the pins connecting them with the gripping jaws. Extend the pin described in the specifications as "$e^5$," which is set in one of the eye pieces of the hinge joint of the gripping jaws of plaintiff's machine around the roller, embracing them tightly, so that the jaws and rollers are one, there is revealed the defendant's device. The defendant's device manifestly escapes exact imitation of plaintiff's by only formal differences. It has the same number of elements in the same relations, and performs the same results in substantially the same way.

Judgment is affirmed.

In this case and No. 55 petitions for rehearing were filed. but the court postponed action on them until the supreme court shall decide the question of jurisdiction raised in Columbus Watch Co. v. Robbins.

## NOTE.

Circuit Court of Appeals—Jurisdiction—Interlocutory Decree in Patent Cases.

It will be noted that in this, as well as in the preceding, case, (53 Fed. Rep. 382,) the court goes fully into the merits of the cause, makes an apparently final decision on the questions of validity and infringement, and affirms the judgment below in toto. The appeal in each case was under section 7 of the act creating the circuit court of appeals, which allows an appeal from "an interlocutory decree granting or continuing" an injunction. Apparently no question was raised as to the extent of the review which the court is authorized to make on such an appeal. This question, however, has been under consideration in some of the other circuits, and has given rise to a conflict of decisions.

In Dudley E. Jones Co. v Munger Manuf'g, etc., Co., 2 U. S. App. 55, 1 C. C. A 158, 49 Fed. Rep. 61, decided in the fifth circuit. the court, as here, considered the case on the merits, held that there was no infringement, and remanded the cause, with orders to dismiss the bill. Afterwards the complainant applied for a rehearing, and at the same time moved the court to vacate all its proceedings therein, and dismiss the appeal for want of jurisdiction, claiming that the decree

below, which was the usual one sustaining the patent, finding infringement, and directing an injunction and accounting, was neither a final decree, nor an appealable interlocutory decree under section 7. It was held, however, that the court had jurisdiction under section 7, and that the complainant, by submitting the cause on its merits, had waived his right to object to a full determination of the controversy, and could not thereafter question the jurisdiction on a motion for rehearing. The court, nevertheless, modified its former decree, so as merely to remand the cause, and direct that the injunction be dismissed.

In the mean time the case of Richmond v. Atwood, 5 U. S. App. 1, 1 C. C. A. 144, 48 Fed. Rep 910, had been decided in the first circuit, and there again the case was apparently considered on its merits without question. The decree, however, was merely to the effect that "the complainant is not entitled to an injunction, and the decree of the circuit court is accordingly reversed." Thereafter a petition for a rehearing was filed, and on the hearing thereof the court itself raised the question as to the extent of its jurisdiction, and as to the form of its mandate, to wit, whether it should simply order that the decree for an injunction be reversed, or should direct that the bill be dismissed. Briefs were filed on this question, and, after full consideration, the court held substantially as follows:

(1) That a decree which is rendered after a full hearing on the merits, and which sustains the validity of the patent, declares infringement, and awards a perpetual injunction and an accounting, is an "interlocutory decree" granting an injunction, from which an appeal will lie under section 7.

(2) That the term "interlocutory order or decree" was used in its broadest sense in section 7, and should be given full scope, to the end that a party aggrieved by an order or decree granting an injunction at any stage of the proceedings may have a speedy remedy by appeal.

(3) That, on such an appeal in a patent case, where the whole record is before the circuit court of appeals, and, in order to determine the rightfulness of the injunction, the court necessarily examines the whole case on its merits, and reaches the conclusion that there is no infringement, it may not only reverse the decree, and dissolve the injunction, but may also vacate the order for an accounting, and order the bill dismissed; thus rendering such a decree as the lower court should have rendered on the whole case.

The most recent case involving this question is that of Columbus Watch Co. v. Robbins, 52 Fed. Rep. 337, decided in the sixth circuit. There the decree below was the same as in the Munger and Atwood Cases, and the parties to the appeal joined in an application to the court to hear and finally determine the cause on its merits. The court held, however, that it could not take jurisdiction, even by consent, of the whole controversy; that the appeal only brought up for review that part of the interlocutory decree relating to the injunction, that all other parts of the decree—such as those relating to the validity of the patent, its infringement, and the questions that may arise on the accounting ordered to ascertain damages and profits—had not yet left the jurisdiction of the trial court; and that the only question presented for determination was whether the decree for an infringement was providently granted, in the legal discretion of the trial court, which question involved only incidentally the question of the validity of the patent, and the infringement complained of. In its opinion the court referred to the first decision in the Atwood Case and to both decisions in the Munger Case. It considered that the last decision in the Munger Case indicated an opinion that the court had full jurisdiction on the merits, and, in view of this difference between the two circuits, certified the question to the supreme court for decision, under section 6 of the act creating the circuit court of appeals. This important question is thus in a fair way to be soon settled by ultimate authority.